**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, STATE OF MISSISSIPPI, STATE OF LOUISIANA, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 2:21-cv-00079-Z |
| JANET YELLEN, in her official capacity as Secretary of the Treasury, et al., | § § § | |
| *Defendants*. | § § | |

**PLAINTIFF STATES' BRIEF IN SUPPORT OF THEIR
COMBINED REPLY IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

Table of Contents .................................................................................................. i

Introduction ...................................................................................................... 1

Argument ......................................................................................................... 3

    I.     This Court Has Jurisdiction .................................................................. 3

          A.     The States have standing. .......................................................... 3

          B.     The States' claims are ripe. ...................................................... 9

    II.    The States are Entitled to Summary Judgment on their Spending Clause Claim ....................................................................................................... 10

          A.     The Tax Mandate is ambiguous. .............................................. 10

          B.     The Tax Mandate is coercive. .................................................. 15

          C.     The Tax Mandate is not related to ARPA's purpose. ............... 18

    III.   Defendants are not Entitled to Summary Judgment on the States' Equal Sovereignty Claim ............................................................................... 21

    IV.   The States are Entitled to the Relief they Seek .................................... 22

          A.     The States meet the requirements for a permanent injunction. ... 22

          B.     The States meet the requirements for a declaratory judgment. .... 23

Conclusion ...................................................................................................... 24

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Quarles*,
  92 F.2d 321 (4th Cir. 1937) ..................................................23

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982)..................................................7

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
  576 U.S. 787 (2015)..................................................3, 5

*Arizona v. Yellen*,
  No. 2:21-cv-514, 2021 WL 3089103 (D. Ariz. July 22, 2021), appeal filed,
  No. 21-16227 (9th Cir. July 26, 2021).................................. *passim*

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006)..................................................10, 12

*Barnes v. E-Systems, Inc.*,
  501 U.S. 1301 (1991)..................................................5

*In re Border Infrastructure Env't Litig.*,
  284 F. Supp. 3d 1092 (S.D. Cal. 2018)..................................................21

*Buckley v. Valeo*,
  424 U.S. 1 (1976)..................................................9

*City & County of San Francisco v. Sessions*,
  349 F. Supp. 3d 924 (N.D. Cal. 2018), *aff'd in part, vacated in part on other
  grounds sub nom. City & County of San Francisco v. Barr*, 965 F.3d 753 (9th
  Cir. 2020) ..................................................20

*Clinton v. City of N.Y.*,
  524 U.S. 417 (1998)..................................................3

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019)..................................................3, 17

*DM Arbor Ct., Ltd. v. City of Houston*,
  988 F.3d 215 (5th Cir. 2021) ..................................................9

*Gruver v. Louisiana Board of Supervisors for LSU*,
  959 F.3d 178 (5th Cir. 2020) ..................................................16

*Hyatt v. Thomas*,
      843 F.3d 172 (5th Cir. 2016) ...................................................................21

*Jackson v. Birmingham Board of Education*,
      544 U.S. 167 (2005)............................................................................11

*Kentucky v. Yellen*,
      No. 3:21-cv-17, 2021 WL 4394249 (E.D. Ky. Sept. 24, 2021)..................... *passim*

*Koontz v. St. Johns River Water Mgmt. Dist.*,
      570 U.S. 595 (2013)..............................................................................3

*Maryland v. King*,
      567 U.S. 1301 (2012)............................................................................22

*Massachusetts v. Mellon*,
      262 U.S. 447) (1923) ...............................................................................6

*Mayweathers v. Newland*,
      314 F.3d 1062 (9th Cir. 2002) .............................................................4, 5, 11, 15

*Miller v. Tex. Tech Health Scis. Ctr.*,
      421 F.3d 342 (5th Cir. 2005) .................................................................18

*Missouri v. Yellen*,
      No. 4:21-cv-376, 2021 WL 1889867 (E.D. Mo. May 11, 2021), appeal filed,
      No. 21-2118 (8th Cir. May 18, 2021) ..............................................................2, 5, 9

*Murphy v. NCAA*,
      138 S. Ct. 1461 (2018)..........................................................................16

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
      833 F.2d 583 (5th Cir. 1987) ....................................................................9

*New York v. DOJ*,
      951 F.3d 84 (2d Cir. 2020).....................................................................17

*New York v. United States*,
      505 U.S. 144 (1992)..............................................................................16

*NFIB v. Sebelius*,
      567 U.S. 519 (2012)....................................................................6, 16, 17, 18

*Nw. Austin Mun. Util. Dist. v. Holder*,
      557 U.S. 193 (2009)..............................................................................21

*Ohio v. Yellen*,
      No. 1:21-cv-181, 2021 WL 1903908 (S.D. Ohio May 12, 2021) (*Ohio I*)..............................4

*Ohio v. Yellen*,
   No. 1:21-cv-181, 2021 WL 2712220 (S.D. Ohio July 1, 2021) (*Ohio II*),
   appeal filed, No. 21-3787 (6th Cir. Sept. 3, 2021)..................................................... *passim*

*Otto v. City of Boca Raton*,
   981 F.3d 854 (11th Cir. 2020) ............................................................................22

*Pederson  v. LSU*,
   912 F Supp. 892 (M.D. La. 1996).......................................................................16

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S 1 (1981)...............................................................................................10, 11

*Printz v. United States*,
   521 U.S. 898 (1997)..............................................................................................4

*Sherwin-Williams Co. v. Holmes County*,
   343 F.3d 383 (5th Cir. 2003) ...............................................................................23

*South Dakota v. Dole*,
   483 U.S. 203 (1987)....................................................................................17, 18, 20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)..............................................................................................9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)..............................................................................................8

*Tex. Educ. Agency v. U.S. Dep't of Educ.*,
   992 F.3d 350 (5th Cir. 2021) ........................................................................ *passim*

*Texas Educ. Agency v. United States Dept. of Educ.*,
   992 F.3d 350 (5th Cir. 2021) ...............................................................................12

*Texas Office of Pub. Util. Counsel v. FCC*,
   183 F.3d 393 (5th Cir. 1999) .............................................................................5, 7

*Texas v. United States*,
   787 F.3d 733 (5th Cir. 2015) .................................................................................5

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) .................................................................................5

*Tidewater Inc. v. United States*,
   565 F.3d 299 (5th Cir. 2009) ...............................................................................10

*United States v. Davis*,
   226 F.3d 346 (5th Cir. 2000) ...............................................................................12

*United States v. Lipscomb*,
    299 F.3d 303 (5th Cir. 2002) ................................................................20

*United States v. Pickard*,
    100 F. Supp. 3d 981 (E.D. Cal. 2015)...................................................21

*Virginia Department of Education v. Riley*,
    106 F.3d 559 (4th Cir. 1997) (per curiam).............................................14

*West Virginia v. U.S. Dep't of Treas.*,
    No. 7:21-cv-465, 2021 WL 2952863 (N.D. Ala. July 14, 2021) ..................2, 4, 8, 9

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)...........................................................................23

**Consitutional Provisions**

Tex. Const. art. III, § 49a ........................................................................12

La. Const. art. VII, § 10 ...........................................................................12

**Statutes**

42 U.S.C.
    § 802(a)(1) ....................................................................................18
    § 802(c)(1) ....................................................................................18
    § 802(c)(2)(A)...........................................................................5, 13
    § 802(c)(2)(S)................................................................................14
    § 2000cc .......................................................................................11
    § 2000cc-1 ....................................................................................11

Miss. Code Ann. § 27-103-125.................................................................12

**Other Authorities**

Affordable Care Act................................................................................17

American Rescue Plan Act of 2021 .............................................................1

Maternity Act of 1921..............................................................................6

Religious Land Use and Institutionalized Persons Act..................................11

**INTRODUCTION**

The Tax Mandate in the American Rescue Plan Act of 2021 ("ARPA") is unconstitutional in at least three respects. First, it is unconstitutionally ambiguous. The Tax Mandate prohibits state tax cuts where ARPA funds are used to "directly or indirectly offset a reduction" in a State's "net tax revenue." But nobody knows what an "indirect offset" of "net tax revenue" means, including the Secretary of the Treasury. So the States cannot tell how they are allowed to cut taxes and how they are not. In Defendants' Combined Reply,[1] they attempt to explain what an *indirect offset* is by recycling the same unhelpful example already addressed in the States' Combined Response and rejected by other courts. And Defendants do not even address *net tax revenue*.

Second, the Tax Mandate is also unconstitutionally coercive. Congress has offered massive sums of federal funds to the States at a time when they need it the most. The COVID-19 pandemic substantially increased the States' costs of providing essential services and negatively affected their general revenue. Arrangements between the States and the federal government are supposed to be voluntary, but the States cannot seriously consider refusing ARPA funds in these circumstances. In response, Defendants insist that Congress is not required to tell the States what they will have to do if they accept federal funds. All Congress must do, Defendants say, is provide notice that the acceptance of federal funds is "subject to terms and conditions." That is simply not how the Spending Clause works.

Third, the Tax Mandate is unconstitutionally unrelated to ARPA's purpose. It does not guarantee that the States spend ARPA funds on pandemic relief. It only guarantees that, having properly spent APRA funds, state governments are forbidden from returning state funds back to

---

[1] On naming conventions, the States will refer to the briefs filed on these issues as follows. ECF No. 19: "Defendants' Motion." ECF No. 28: "States' Combined Response." ECF No. 46: "Defendants' Combined Reply."

state taxpayers. That mandate is about the size of government, not economic recovery. Defendants offer no substantive defense to this logical inconsistency except to conclude, without explanation or example, that the Tax Mandate is reasonably related to the APRA's purpose.

District courts have now issued decisions in multiple cases challenging the Tax Mandate. *Arizona v. Yellen*, No. 2:21-cv-514, 2021 WL 3089103 (D. Ariz. July 22, 2021), appeal filed, No. 21-16227 (9th Cir. July 26, 2021); *Missouri v. Yellen*, No. 4:21-cv-376, 2021 WL 1889867 (E.D. Mo. May 11, 2021), appeal filed, No. 21-2118 (8th Cir. May 18, 2021); *Kentucky v. Yellen*, No. 3:21-cv-17, 2021 WL 4394249 (E.D. Ky. Sept. 24, 2021); *Ohio v. Yellen*, No. 1:21-cv-181, 2021 WL 2712220 (S.D. Ohio July 1, 2021) (*Ohio II*), appeal filed, No. 21-3787 (6th Cir. Sept. 3, 2021); *West Virginia v. U.S. Dep't of Treas.*, No. 7:21-cv-465, 2021 WL 2952863 (N.D. Ala. July 14, 2021). Three of the four most recent decisions hold that the sixteen States prosecuting those actions had Article III standing. *Kentucky*, 2021 WL 4394249, at *3; *West Virginia*, 2021 WL 2952863, at *6–7; *Ohio II*, 2021 WL 2712220, at *4, *6–7. And the court in *Arizona* indicated that it found a lack of standing based on binding Ninth Circuit precedent, 2021 WL 3089103, at *3–4, which is inconsistent with that in the Fifth Circuit. The court in *Ohio II* permanently enjoined enforcement of the Tax Mandate because it is unconstitutionally ambiguous. 2021 WL 2712220, at *10–21. And the court in *Kentucky* permanently enjoined its enforcement because it is unconstitutionally coercive. 2021 WL 4394249, at *6–8.

There is no jurisdictional obstacle to this Court adjudicating this case. Texas, Mississippi, and Louisiana have standing to bring this lawsuit against the restrictions on their power to cut taxes when accepting ARPA funds. Their injury is straightforward: the abridgement of their sovereign power to tax. The Tax Mandate is an ambiguous and coercive restriction on the States' ability to cut state taxes. Defendants offer no new defense to this fact, other than to reiterate their

demonstrably false argument that the Tax Mandate does not prohibit tax cuts.

Because the Tax Mandate is unconstitutional, the Court should permanently enjoin it and allow the States to exercise their full sovereignty.

ARGUMENT

I.      **This Court Has Jurisdiction**

A.      **The States have standing.**

The States have standing because they were injured when they were presented with an unconstitutionally ambiguous and coercive condition, which is unrelated to ARPA's purpose, targets a subset of States, and forced them to choose between forgoing much needed funding or surrendering their state sovereignty. States' Combined Response at 7–10. The Tax Mandate also has and will continue to inflict harm to their sovereign taxing authority. *Id.* at 10–13. And the States also have pre-enforcement standing. *Id.* at 13–15.

1.      **The States were injured by ARPA's passage.**

The States were injured by Congress's offer of federal funds on the condition that they agree to unconstitutional conditions. As explained in prior briefing, the States suffered a "constitutionally cognizable injury" when forced to choose between the "loss of federal funds" or the invasion of their constitutional authority. *See* States' Combined Response at 7–10; *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013); *Clinton v. City of N.Y.*, 524 U.S. 417, 433 n.22 (1998); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800–04 (2015). Defendants contend that an injury to state sovereignty cannot confer Article III standing, Defendants' Combined Reply at 6–8, but the decisions in *Ohio* and *West Virginia* reject that argument, and so should this Court. As the *West Virginia* court explained:

The Plaintiff States allege that the Defendants have already intruded into their

3

sovereign authority to set their own tax policy. Their injury in fact is having to choose between forgoing a benefit (federal funds) or accepting that benefit on unconstitutional terms.

2021 WL 2952863, at *6; *see also Ohio v. Yellen*, No. 1:21-cv-181, 2021 WL 1903908, at *7 (S.D. Ohio May 12, 2021) (*Ohio I*); *Ohio II*, 2021 WL 2712220, at *6–7.

Thus, the States suffered an injury in fact when Congress passed ARPA because they were presented with an unconstitutionally ambiguous deal. In other words, it was Congress passing the Act, not the States accepting the money, nor the Treasury eventually recouping the money, if it ever happens, that violated the Constitution.

Defendants argue that the Tax Mandate does not injure the States because it does not bar *all* tax cuts. Defendants' Combined Reply at 6–7. But that is not responsive to Plaintiffs' injury. Defendants' argument implies that Congress can abridge state sovereignty so long as it does not go *too far*. But the sovereignty the States retained at the founding is "inviolable," so any infringement of that sovereignty necessarily confers standing to remedy it. *Printz v. United States*, 521 U.S. 898, 919 (1997) (quoting *The Federalist No. 39*, at 245 (James Madison) (Clinton Rossiter ed., 1961)). Moreover, Defendants' argument that ARPA bars some tax cuts but not others is of little comfort to the States. Because ARPA is ambiguous, the States do not know *which* tax cuts are barred. That creates present and future injury to state legislators and agencies that set state tax policy. States' Combined Response at 10–13. Binding Fifth Circuit precedent holds that States may be held to conditions in spending provisions only when the conditions are clear as to what they require. *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 358–62 (5th Cir. 2021).

Defendants cite the *Arizona* and *Missouri* decisions, but they are of no help. In *Arizona*, the court determined that the Ninth Circuit precedent of *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002), provides that States need only be on notice of conditions generally, and that Congress is not required to specify the substance of those conditions. 2021 WL 3089103, at *3

4

(citing *Mayweathers*, 314 F.3d at 1067). That interpretation of the Spending Clause is wrong, as explained in Part II.A. Regardless, the Fifth Circuit has said otherwise. *Tex. Educ. Agency*, 992 F.3d at 361–62.

The *Missouri* decision is likewise unpersuasive. The court there understood ARPA to not affect state sovereignty at all. 2021 WL 1889867, at *4 ("Missouri's sovereign power to set its own tax policy is not implicated by the ARPA. The Missouri legislature is free to propose and pass tax cuts as it sees fit."). "In short," the court held, "State tax cuts are not proscribed by the ARPA." *Id.* But ARPA prohibits state tax cuts if they "directly or indirectly offset a reduction in . . . net tax revenue." 42 U.S.C. § 802(c)(2)(A). As explained in prior briefing, the Tax Mandate is unconstitutionally ambiguous, making it impossible for the States to know when it may be violated. States' Combined Response at 22–28. That ambiguity, in turn, hangs over legislators and state agencies when they contemplate changes to state tax policy. *Id.* at 10–13. This interference in state tax policy is a cognizable harm. *See Barnes v. E-Systems, Inc.*, 501 U.S. 1301, 1304 (1991) (Scalia, J.); *Texas Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 449 (5th Cir. 1999); *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015); *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015); *Ariz. State Legislature*, 576 U.S. at 800–04. The *Missouri* court's decision is unpersuasive because it, like Defendants here, failed to recognize the harm inflicted by the Tax Mandate.

By contrast, the *Kentucky* court was appropriately sensitive to this federalism concern. "If you think about it," the court explained, "the coercion presented in the ARPA is exactly the kind of intrusion into state sovereignty the Constitution prohibits. . . . Thus, where the federal government unduly influences the States' power to set their own tax policies, the federal government oversteps its bounds." 2021 WL 4394249, at *6.

Defendants also erroneously contend that the 1923 Supreme Court decision *Massachusetts v. Mellon*, 262 U.S. 447 (1923), "forecloses Plaintiffs' sovereignty-as-injury argument." Defendants' Combined Reply at 7. *Mellon* is best understood as holding that the federal government may lawfully impose conditions on an offer of federal funds to the States. *Mellon*, 262 U.S. at 480–83. The statute at issue in *Mellon* was the Maternity Act of 1921, which offered federal funds in exchange for compliance with directions from the newly created Children's Bureau concerning implementation of the Maternity Act. Those directions included rules on which nurses were eligible to participate and which educational materials were to be used. *Mellon*, 262 U.S. at 478–80. In this respect, the program resembled cooperative social welfare programs we see today, like Medicaid. The critical difference here is that ARPA asks States to *surrender* their sovereign power to determine how much they tax their citizens. That is different in kind than a request by the federal government to follow administrative rules in implementing a social program that it designed. *Mellon* involved the latter and does not inform the decision here. *See NFIB v. Sebelius*, 567 U.S. 519, 579 (2012) (comparing the program in *Mellon* to Medicaid). The federal government can "seek to purchase from the States their acquiescence in the exercise of the States' sovereign powers," *Ohio II*, 2021 WL 2712220, at *11, but it cannot seek to abridge those powers altogether.

### 2.    The States continue to be injured by ARPA.

The States also sustain present and future injury because the Tax Mandate's ambiguity clouds their decisionmaking when setting tax policy. States' Combined Response at 10–13. The threat of enforcement of the ambiguous Tax Mandate has multiple consequences. First, it affects the state legislatures' independence. As explained in *Ohio II*:

> [The Tax Mandate] essentially means that Ohio's legislature may be disinclined to consider *any* rate reduction, as to *any* state tax, because the Secretary could interpret that reduction as triggering a right to recoupment. Or, at the very least, Ohio legislators will have incentives to minimize the *size* of any such reductions in hopes of reducing the magnitude of any associated recoupment.

2021 WL 2712220, at *8. The *Kentucky* court found that Tennessee and Kentucky had standing on similar grounds. 2021 WL 4394249 at *3 (adopting the argument that the Tax Mandate "proscrib[es] use of the funds for their preferred tax policies in the coming years").

Second, the Tax Mandate casts doubt on the validity of recently implemented tax cuts. Texas, Louisiana, and Mississippi have all accepted ARPA funds and have either passed legislation cutting taxes or are actively considering such legislation. States' Combined Response at 10–12; *see also, e.g.*, App.182–87 (amending Texas's franchise tax); *id.* 190–93 (sales and use tax). The States have a "sovereign interest in 'the power to create and enforce a legal code,'" but ARPA abridges that power and calls into question legislation like that listed above. *Tex. Office of Pub. Util. Council v. FCC*, 183 F.3d 393, 449 (5th Cir. 1999) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982)).

Defendants contend that the States fail to "prove" that any recently enacted or future legislation "will result in a net-tax-revenue reduction." Defendants' Combined Reply at 3–4. They cite the *Arizona* decision for the proposition that the States fail to "claim to have directly or indirectly used ARPA funds to supplement a reduction in its net income." *Id.* at 3 (quoting *Arizona*, 2021 WL 3089103, at *5). But this assumes that the States know what the terms *indirect offset* and *net tax revenue* mean. But they do not; and the Secretary has herself failed to explain them. *See* States' Combined Response at 23–28; *infra* Parts II.A.1 and II.A.2. So long as ARPA's ambiguous Tax Mandate continues, the States will be deterred from exercising their sovereign power to cut taxes, and if they do cut taxes, they will face the uncertainty of whether those cuts will result in an action to recoup ARPA funds. Those concrete injuries harm Plaintiffs now and thus confer Article III standing to bring this lawsuit.

### 3.    The States have pre-enforcement standing.

The States have standing to challenge the Tax Mandate before the Treasury attempts to

recoup funds under ARPA. *See* States' Combined Response at 13–15; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–65 (2014). The States have considered and passed tax legislation and will continue to do so. Those legislative acts could subject the States to recoupment by the Treasury Department. And there is a substantial threat of enforcement because ARPA authorizes the Secretary to attempt to recoup funds where the Tax Mandate has been violated, and the Secretary has not "disavowed enforcement." *Driehaus*, 573 U.S. at 165; *see also* States' Combined Response at 14.

Defendants raise three objections. First, they insist that the States fail to satisfy the first two elements because ARPA does not proscribe tax cuts. Defendants' Combined Reply at 3–4. That is wrong, as explained above. *See* Part I.A.1. The States have demonstrated that they have a constitutional interest in setting their tax policy, that the Tax Mandate abridges that sovereign right, and that they have passed and will continue to pass legislation that may be prohibited by the Tax Mandate. As the *Kentucky* and *West Virginia* courts recognized, it really is that simple. *See* 2021 WL 4394249, at *3; 2021 WL 2952863, at *7.

Second, Defendants contend that there is no constitutional interest at issue here because the Tax Mandate "merely restricts a State's ability to use *federal funds* distributed under the Rescue Plan to offset a reduction in net tax revenue." Defendants' Combined Reply at 4. That is wrong. As the States have pointed out, the Tax Mandate differs from provisions placing conditions on the use of *federal* funds because it instead restricts the use of *State* revenue for tax cuts. States' Combined Response at 30–31.

Third, Defendants argue that the States have not shown "a credible threat of enforcement" because they have not passed or considered a tax cut that results in a reduction in "net tax revenue" that is directly or indirectly offset by ARPA funds. Defendants' Combined Reply at 4–5 (citing

*Missouri*, 2021 WL 1889867, at \*4; *Arizona*, 2021 WL 3089103, at \*5). But that argument fails because the Tax Mandate's ambiguity prevents the States from understanding which tax cuts subject them to enforcement, and which do not. More recent decisions persuasively reject Defendants' position. *See Kentucky*, 2021 WL 4394249, at \*3; *West Virginia*, 2021 WL 2952863, at \*7.

### B.    The States' claims are ripe.

The doctrine of prudential ripeness centers on "prudential reasons for refusing to exercise jurisdiction." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)). Ripeness is primarily concerned with "[p]roblems of prematurity and abstractness." *Id.* at 218 n.1 (quoting *Buckley v. Valeo*, 424 U.S. 1, 114 (1976)); s*ee also New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir. 1987).

The States' claims are ripe for review because they are neither premature nor abstract; Defendants acknowledge that "this case presents issues that are purely legal, which are amenable to resolution without the need for discovery." ECF No. 21 at 1.

Defendants attempt to tie the ripeness question to the standing issue. Defendants' Combined Reply at 8. That is, they contend that the States' claims are not ripe because they have not been injured. But that is wrong, as explained above. The States suffered a concrete injury when ARPA was passed and continue to suffer one. Nor can Defendants prevail by arguing, *id.*, that the States fail to show that the Tax Mandate is unconstitutional in all respects. First, an ambiguous condition is still unconstitutionally ambiguous even if it may clearly apply in some subset of circumstances. *Ohio II*, 2021 WL 2712220, at \*8. And as to unconstitutional coercion, the States have demonstrated that, especially in the context of the financial difficulties caused by the COVID-19 pandemic, ARPA's offer was effectively a gun to the head for Texas (12.5% of 2022 budget),

Mississippi (31%), and Louisiana (7%). App.162, 168, 277.

II.      **The States are Entitled to Summary Judgment on their Spending Clause Claim**

The Court should grant the States' Motion for Partial Summary Judgment with respect to their Spending Clause claim and deny the parallel portions of Defendants' Motion for Summary Judgment. *See Tidewater Inc. v. United States*, 565 F.3d 299, 302 (5th Cir. 2009).

A.      **The Tax Mandate is ambiguous.**

The Tax Mandate is unconstitutional because it is ambiguous. When Congress offers the States federal funds that are subject to conditions, it must explain those terms so that the States "clearly understand" what they are obligated to do. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). The *Ohio* court correctly recognized that ARPA fails to do so. 2021 WL 2712220, at *12; *see also Kentucky*, 2021 WL 4394249, at *7 ("Kentucky and Tennessee may very well be correct about these alternative grounds.").

As a preliminary matter, Defendants contend that Congress must "simply make clear that acceptance of federal funds obligates States to comply with *a condition*" in order to comply with the constitutional requirement that conditions be unambiguous. Defendants' Combined Reply at 9 (emphasis added). That is a remarkable contention, with absolutely no limiting principle. Supreme Court and Fifth Circuit precedent demonstrate that it is wrong. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S 1, 17 (1981); *Tex. Educ. Agency*, 992 F.3d at 361–62.

*Pennhurst* stands for the proposition that a federal spending program must unambiguously state the applicable conditions, not merely acknowledge that they exist. States' Combined Response at 22–23. Legislation "enacted pursuant to the spending power is much in the nature of a contract," so the "legitimacy of Congress's power to legislate under the spending power rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst*, 451 U.S. at 17. "There can, of course, be no knowing acceptance if a State is unaware of the conditions

10

or is unable to ascertain what is expected of it." *Id.* In other words, Congress must clearly state *both* the existence of any conditions *and* what those conditions require. Only then can the States be "cognizant of the consequences of their participation." *Id.* Defendants erase the second requirement of *Pennhurst*.

The lengths to which Defendants go in stretching a number of Supreme Court and circuit court decisions confirms their position's futility. For instance, Defendants cite *Jackson v. Birmingham Board of Education*, but that case merely clarified that for purposes of liability under Title IX, entities that receive federal funds were on notice that intentional sex discrimination included retaliation. 544 U.S. 167, 182–83 (2005). It did not hold that Congress could offer the States federal money without putting them on notice of the terms of the conditions.

Similarly, Defendants would have the Court believe that *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002), stands for the proposition that Congress can impose a completely "unpredictable" condition when it acts pursuant to the spending power. Defendants' Combined Reply at 10–11. Not so. *Mayweathers* dealt with the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which prohibits entities receiving federal funds from implementing a land-use or prison regulation that imposes a substantial burden on a person's religious exercise unless the entity can satisfy strict-scrutiny. *See* 314 F.3d at 1067; 42 U.S.C. §§ 2000cc, 2000cc-1. Far from being an unknown condition, the strict-scrutiny framework was widely familiar and sufficed to put participating States on notice of what acceptance of federal funds entailed. Indeed, the Ninth Circuit acknowledged that RLUIPA followed "a long tradition" of federal legislation based on similar legal principles. *Mayweathers*, 314 F.3d at 1067.

Despite Defendants' attempts to stretch other decisions, their Spending Clause interpretation is wrong. As explained in *Ohio II*, federal spending programs must put the States on

"clear notice" of their obligations, else they are unconstitutional. 2021 WL 2712220, at *12 (quoting *Arlington*, 548 U.S. at 296). Their interpretation would allow Congress to enact a naked "condition" that an agency could use to impose mandates that are nowhere set forth in the spending condition itself, contrary to the Fifth Circuit's recent ruling in *Texas Educ. Agency v. United States Dept. of Educ.*, 992 F.3d 350, 361–62 (5th Cir. 2021). If Defendants are right that Congress need only specify the *existence* of a condition, it could offer the States federal funds without providing *any* details on what those conditions are. Defendants, however, are wrong: The Spending Clause requires Congress to specify the conditions it imposes on the acceptance of federal funds such that the States "would clearly understand" what they are obligated to do. *Arlington*, 548 U.S. at 296. The Tax Mandate fails to do so.

### 1.    The Tax Mandate does not explain what an indirect offset means.

The first reason the Tax Mandate is ambiguous is that ARPA does not define the term "indirectly offset" or explain the breadth of this provision. The States are required to balance their budgets. Tex. Const. art. III, § 49a; Miss. Code Ann. § 27-103-125; La. Const. art. VII, § 10. And because "money is fungible," *United States v. Davis*, 226 F.3d 346, 357 (5th Cir. 2000), any reduction in revenue due to a tax cut might be deemed by the Secretary to have been "indirectly offset" by another source of revenue in a State's budget, including the receipt of ARPA funds.

Falling back on their faulty interpretation of the Spending Clause, Defendants hardly attempt to contest the Tax Mandate's ambiguity on the merits. *See* Defendants' Combined Reply at 13–15. They offer no explanation as to what an indirect offset means. Instead, they recycle the same two examples that ostensibly demonstrate the difference between a direct and indirect offset. *Id.* at 13. But as the States have explained, these examples fail to clarify the Tax Mandate's ambiguity. States' Combined Response at 25–27.

First, they do not make sense. As explained by the court in *Ohio II*, these examples "amount

12

[] to two slightly different ways of saying the same thing, albeit swapping the order in which steps 2 and 3 are presented." 2021 WL 2712220 at *14. In each, the hypothetical State accepted $2 billion in funds, cut $2 billion in taxes, and used the funds to fill the budgetary hole left by the tax cut. As such, direct and indirect offsets *seem* to mean the same thing, while Defendants continue to insist that they do not. As explained in *Ohio II*:

> The problem, though, is that while offering identical examples, the Secretary insists that there is a *difference* between the two terms, and believes that the examples illustrate that difference. In other words, the Secretary's briefing contends that the term "indirect offset" conveys something different from the term "direct offset," yet cannot articulate what that difference is.

*Id.* Moreover, even if Defendants could offer a coherent example of an indirect offset, they still "have not provided any definition" of that term, "let alone one that flows either from the statutory language, or from the use of that term in the context of the statute more generally." *Id.* at *15. For this reason, Defendants fail to identify a principle that limits the Treasury Department's ability to label *any* tax cut as being indirectly offset by ARPA funds. *See also id.* ("Based on the Tax Mandate's language, the Secretary could deem essentially *any* reduction in the rate of any one or more state taxes—even if other tax rates were increased—to be 'a change in [tax] laws' that results in an 'indirect[] offset [of] a reduction in [Ohio's] net tax revenues.'" (quoting 42 U.S.C. § 802(c)(2)(A))).

Defendants have failed to explain what an indirect offset means. In fact, they appear to concede that Congress did not choose its words carefully when it passed ARPA. They suggest that a lower threshold of clarity should be applied "in the context of an emergency aid statute that Congress enacted quickly." Defendants' Combined Reply at 14. But a statute is either unambiguous or it is not. And here, it is not.

13

### 2. The Tax Mandate does not explain what a reduction in net tax revenue means.

The Tax Mandate is ambiguous for the additional reason that ARPA fails to explain what a "reduction" in "net tax revenue" means. 42 U.S.C. § 802(c)(2)(S). That term "necessarily assumes some baseline," *see* States' Combined Response at 27, but ARPA fails to provide a "mechanism for determining whether a State's net tax revenues are reduced or not." *Ohio II*, 2021 WL 2712220, at *13 (cleaned up). The failure to define a baseline raises numerous issues. Is the net revenue affected if the State cuts *rates* but *revenues* increase? Is the baseline based on *expected* revenues or *actual* revenues? *See id.* ("In other words, when Ohio legislators enact a lower *rate* on a given tax, they may do so based on a belief that actual tax collections will go *up*."). These and other questions remain unanswered. In fact, Defendants do not mention this issue at all in their Combined Reply.

### 3. Regulations cannot cure the Tax Mandate's ambiguity.

Nor can the Interim Final Rule ("IFR") cure an unconstitutionally ambiguous statute. Binding Fifth Circuit precedent provides that "regulations cannot provide the clarity" that the Spending Clause requires in order for State acceptance of conditional federal funds to be "knowing." *Tex. Educ. Agency*, 992 F.3d at 361; *see also* States' Combined Response at 28–29. The en banc Fourth Circuit reached the same result in *Virginia Department of Education v. Riley*, 106 F.3d 559, 567 (4th Cir. 1997) (per curiam). "Relying on regulations to present [a] clear condition," the Fifth Circuit explained, "is an acknowledgement that Congress's condition was not unambiguous." *Tex. Educ. Agency*, 992 F.3d at 361. Further, if Congress could delegate its obligation to establish the conditions imposed on federal spending, it could "grant the Executive a power of the purse," which would be "inconsistent with the Constitution's meticulous separation of powers." *Id.* at 362.

The *Tex. Educ. Agency* decision is binding on this Court and is dispositive of the question of whether the IFR cures ARPA's ambiguity. Previously, Defendants pointed to the *Arizona* decision, observing that it reached a contrary holding. *See* 2021 WL 3089103, at *3–4. But that decision relies on the Ninth Circuit's holding in *Mayweathers*, 314 F.3d 1062. As illustrated above, the Fifth Circuit's decision in *Tex. Educ. Agency* contradicts that decision's holding that ambiguity in the condition itself does not pose a constitutional problem. Thus, *Mayweathers*, and by extension *Arizona*, are not the law of this Circuit, and cannot be relied on by this Court to inform its decision on this issue.

Perhaps sensing the unstable ground, Defendants abandon their prior argument. Defendants' Combined Reply at 12. Instead of re-urging their previous theory, Defendants now contend that "it is not necessary for the Court to consider" *Tex. Educ. Agency* because "agency regulations have no bearing on the Spending Clause analysis." *Id.* They tie this concession to the false assertion that Congress need only specify the existence of conditions in order for State acceptance of federal funds to be knowing and voluntary. But that interpretation is wrong, as explained in Part II.A; *see also Ohio II*, 2021 WL 2712220, at *15–20; *id.* at *20 ("[T]he Tax Mandate violates the Spending Clause the IFR notwithstanding.").

## B.  The Tax Mandate is coercive.

The Tax Mandate also unconstitutionally coerces and commandeers States because it seeks to control their taxation power—something Congress could not do on its own—by offering the States pandemic-relief funds that they cannot seriously refuse. States' Combined Response at 19–22.

Defendants rightly note that the coercion and anticommandeering claims "should be analyzed together." Defendants' Combined Reply at 16 n.2. That is so because ARPA seeks to control state legislatures by coercing them into accepting Congress's preferred taxation policy. But

the federal government has no power "to issue direct orders" to state governments. *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018); *see also New York v. United States*, 505 U.S. 144, 162 (1992) ("[T]he Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions."). Defendants therefore violate both the Tenth Amendment anticommandeering principle and the Spending Clause anti-coercion principle because they seek to govern the States' exercise of their sovereign powers.

Defendants argue at the outset that the coercion analysis does not apply to the Tax Mandate because ARPA involves new federal funds, not preexisting ones. They contend that the recent decision in *Gruver v. Louisiana Board of Supervisors for LSU* is "binding Fifth Circuit precedent," which holds that imposing "spending conditions on *new* funds, as opposed to preexisting funds, does not 'trigger[] the coercion question' at all." Defendants' Combined Reply at 16 (quoting 959 F.3d 178, 183–84 (5th Cir. 2020)).

But the question presented in *Gruver* was whether the Supreme Court's decision in *NFIB v. Sebelius* was a sufficient basis to seek reconsideration of the Fifth Circuit's decision in *Pederson v. LSU,* 213 F.3d 858 (5th Cir. 2000), that States waive Eleventh Amendment immunity against sex-discrimination lawsuits when they accept Title IX funds. The Fifth Circuit rejected LSU's position, explaining that (i) the existence of a condition that does not govern the use of funds does not necessarily render a law coercive and (ii) Congress had not unlawfully surprised LSU with post-acceptance conditions when it amended Title IX in 1986, fourteen years after it was originally enacted into law. *Gruver*, 959 F.3d at 182–84. In fact, the *Gruver* court did not even *discuss* spending conditions on new funds because that subject was not at issue there. Defendants are wrong to represent that *Gruver* stands for the proposition that conditions placed on new federal funds do not implicate the Spending Clause analysis at all.

16

ARPA is indeed coercive. A federal act is coercive if it "pass[es] the point at which 'pressure turns into compulsion.'" *NFIB*, 567 U.S. at 580 (quoting *South Dakota v. Dole*, 483 U.S. 203, 211 (1987)). Congress can offer "mild encouragement," but it cannot threaten. *Id.*, 483 U.S. at 211. It *threatens* when the intended impact "is so significant to the States' overall operation as to leave it with no choice but to agree." *New York v. DOJ*, 951 F.3d 84, 115 (2d Cir. 2020). In addition, Spending Clause scrutiny is "heightened" where, as here, Congress tries to "implement federal policy it could not impose directly under its enumerated powers." *NFIB*, 567 U.S. at 577–78.

Defendants extend their erroneous argument to the merits of the coercion question and insist that ARPA is not coercive because it is a new spending program and does not threaten preexisting funds. Defendants' Combined Reply at 17–18. They cite the *Arizona* decision as supporting that argument. *See* 2021 WL 3089103, at *5. But their distinction is one of form, not of substance. The key question is whether Congress's offer "leaves the States with no real option but to acquiesce," not whether it is an alteration of a preexisting arrangement or the creation of a new one. *NFIB*, 567 U.S. at 582. Both types of arrangements can be coercive.

Contrary to what Defendants would have the Court believe, Defendants' Combined Reply at 17–18, *NFIB* does not stand for the proposition that there are no limits on Congress's power to condition *new* federal spending programs. The central reason why the Affordable Care Act was coercive is that the sum it threatened to revoke was so large—States' entire Medicaid fund. *See NFIB,* 567 U.S. at 580–85 (plurality); *id.* at 682–85 (joint dissent).

Here, Congress did not offer ARPA funds to encourage the States to participate in a new federal program. It offered those funds to help the States cover expenses that they already have because of pandemic. In that respect, Congress's offer is all the more coercive because it was made

17

at a time when Plaintiffs' costs have increased and their general revenue has decreased. As the court in *Kentucky* explained, "[n]ot only have the States been forced to combat the health ramifications of the coronavirus, the pandemic has thrown many States and citizens into severe economic hardship." 2021 WL 4394249 at *5; *see also* ECF No. 31-1 at 14–17 (brief of the Chamber of Commerce and National Federation of Independent Business Small Business Legal Center).

Simply put, the States' need for federal funds is far greater than usual, so their ability to decline such an offer is far less than usual. In the context of the pandemic, "refusing to accede to the conditions set out in the [ARPA] is not a realistic option." *NFIB*, 567 U.S. at 681 (Scalia, J., dissenting). The fact that Plaintiffs desperately need new funds (instead of desperately needing to maintain preexisting funds) makes no difference. *See id.* at 687 ("As the Federal Government sees things, Congress is like the generous benefactor who offers $1 million with strings attached to 50 randomly selected individuals."). The key question is whether the Tax Mandate is *coercive*. It is.

### C.     The Tax Mandate is not related to ARPA's purpose.

Under *Dole*, conditions attached to federal funds must be "reasonably related to the purpose of the expenditure to which they are attached." *Miller v. Tex. Tech Health Scis. Ctr.*, 421 F.3d 342, 348 & n.15 (5th Cir. 2005) (citing *Dole*, 483 U.S. at 207–08). The Tax Mandate fails that test and is therefore unconstitutional for this additional reason. States' Combined Response at 29–31.

ARPA's stated purpose is to "mitigate the fiscal effects stemming from the public health emergency caused by the pandemic. 42 U.S.C. § 802(a)(1). Defendants agree with this. *See* Defendants' Combined Reply at 19 (ARPA "help[s] States economically recover from the pandemic in ways they otherwise could not."). To further that goal, ARPA specifies four areas for spending federal funds: households and business assistance, essential worker compensation, replacement of lost government revenues, and infrastructure investment. *See* 42 U.S.C.

§ 802(c)(1). Defendants insist that the Tax Mandate simply guarantees that States spend ARPA funds in the permitted areas. Defendants' Combined Reply at 19 ("[I]t merely specifies how States may use the newly appropriated funds to ensure that they are used for the public-health and economic recovery purpose of the Act."). That explanation is illogical and does not stand up to the counterexamples identified in the States' Combined Response. States' Combined Response at 29–31.

As a matter of logic, the Tax Mandate does not guarantee that States use ARPA funds in one of the four permitted areas because a State's decision to spend federal funds in those areas is independent of its other spending decisions. If a State spends its ARPA funds on pandemic-recovery initiatives, its decision to cut taxes does not render those funds unspent. The Tax Mandate's actual effect is to compel government spending. States' Combined Response at 30. It does not prohibit the States from using federal funds for pandemic-recovery initiatives and using the money they would have otherwise spent in those areas for totally unrelated purposes. Defendants' failure to engage with this simple example is telling.

Defendants also fail to respond to the States' argument that the Tax Mandate *inhibits* economic relief in some circumstances. The federal government itself recognizes that tax cuts can promote economic recovery. *See* ARPA, Pub. L. No. 117-2, § 9621 (expanding the earned income tax credit), § 9673 (exempting revitalization funds). But when *the States* want to give financial relief to struggling businesses and families, Defendants flip their position and contend that those initiatives are counter to the purposes of economic recovery. That is irrational.

Nor is the Tax Mandate analogous to provisions requiring the States to maintain state spending in areas supplemented by federal funds. Defendants previously made that argument, *see* Defendants' Motion at 16–17, but they appear to abandon it now. The States previously explained

that maintenance-of-effort provisions are substantively different than a bar on tax cuts and that ARPA does not require maintenance of effort. States' Combined Response at 30–31. Defendants do not respond to those arguments. Instead, they stress the "reasonableness" standard, and assume they have met it, without further elaboration. Defendants' Combined Reply at 20 (quoting *United States v. Lipscomb*, 299 F.3d 303, 322 & n.97 (5th Cir. 2002)).

Defendants' final defense is to fall back on the limited nature of the precedent in this area of the law. *See* Defendants' Combined Reply at 20 ("Plaintiffs point to no case, and Defendants are aware of none, in which a court has struck down a funding condition on relatedness grounds."). As a preliminary matter, that there may not be a case exactly on point is not responsive to the States' substantive argument that the Tax Mandate is unrelated to ARPA's purpose. But in any event, courts *have* held that federal spending programs violate the relatedness requirement. *See*, *e.g.*, *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 958–61 (N.D. Cal. 2018), *aff'd in part*, *vacated in part on other grounds sub nom. City & County of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020). These cases are rare, but that is because statutes that impose conditions totally unrelated to their purpose are rare.

All in all, Defendants offer no substantive defense to this aspect of the States' Spending Clause claim. And in truth, no defense could change the fact that the Tax Mandate does not ensure that States spend ARPA funds on pandemic-recovery initiatives. The Court should enjoin enforcement of the Tax Mandate because it is ambiguous and coercive. But the Court should also hold that the Tax Mandate violates the Spending Clause for the additional reason that, under *Dole*, it is unrelated to ARPA's purpose.

III.    **Defendants are not Entitled to Summary Judgment on the States' Equal Sovereignty Claim**

The Court should deny summary judgment against the States' equal sovereignty claim for two reasons. *First*, Defendants fail to demonstrate the absence of a genuine dispute of material fact that ARPA discriminates against the States. A court must deny summary judgment if there is a dispute "over facts that might affect the outcome of the suit under the governing law." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). Although ARPA does not expressly differentiate between the States, statutes that are "facially neutral" may be "easily manipulated." *Nw. Austin Mun. Util. Dist. v. Holder*, 557 U.S. 193, 198 (2009); *see also* States' Combined Response at 16–19. That is exactly what happened here.

There is a discrete category of States, including Texas, Mississippi, and Louisiana, that are historically "much more likely to exercise their sovereign authority to decrease taxes and other government revenues" than other States. ECF No. 1 ¶ 79. Further factual development will show that Congress *designed* ARPA to discriminate against that category of States while remaining neutral on its face. Defendants contend that "no factual development could assist the Court in ruling on this issue," Defendants' Combined Reply at 21, but the opposite is true. The resolution of this fact dispute would unquestionably "affect the outcome of the suit." *Hyatt*, 843 F.3d at 177.

Nor can Defendants prevail by arguing that the equal-sovereignty analysis does not apply to a facially neutral statute. Defendants' Combined Reply at 20–21. At least two courts that have addressed equal-sovereignty claims appear to contemplate that a facially neutral law could support such a claim if supported by evidence of discriminatory purpose. *See In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092, 1144–45 (S.D. Cal. 2018); *United States v. Pickard*, 100 F. Supp. 3d 981, 1011–12 (E.D. Cal. 2015). That is exactly the type of evidence that further factual development will produce. Summary judgment is premature and should be denied.

*Second*, Defendants do not address the States' argument that ARPA's disparate impact on States that historically cut taxes is insufficiently related to its purpose of helping the States to combat the pandemic. As explained in Part II.C, the Tax Mandate simply does not advance the purpose of helping States recover from the pandemic. And in many cases, it would actually inhibit that goal, denying States the opportunity to alleviate the financial burdens imposed by the pandemic on their citizens and their businesses. Summary judgment should be denied on this basis as well.

## IV.     The States are Entitled to the Relief they Seek

### A.     The States meet the requirements for a permanent injunction.

Defendants raise two unavailing objections to the States' request for a permanent injunction. First, they contend that the States are not suffering irreparable injury because the only consequence of violating the Tax Mandate is that they may "have to repay money—the quintessential example of harm that is *not* irreparable." Defendants' Combined Reply at 22. That argument fails because it ignores the States' ongoing sovereign injury. *See Ohio II*, 2021 WL 2712220, at *21 ("And in any event, such damages would do nothing to cure the irreparable harm that Ohio is currently suffering."); *see also Kentucky*, 2021 WL 4394249, at *7 (explaining that "irreparable harm flows naturally from the constitutional violation").

Second, Defendants argue that they will be irreparably harmed by a permanent injunction and that the latter would disserve the public interest because the federal government "suffers a form of irreparable injury" when its laws are enjoined. Defendants' Combined Reply at 23 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). That would be a valid concern if ARPA were constitutional—but it is not. *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020) ("[N]either the government nor the public has any legitimate interest in enforcing an unconstitutional ordinance."). As explained by the *Kentucky* court: "The public interest is

safeguarded with a decision in favor of the Plaintiffs; the States' ability to set their taxing policy as a co-sovereign enhances, rather than threatens, individual liberty." 2021 WL 4394249, at *7.

**B.      The States meet the requirements for a declaratory judgment.**

Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). The States seek a declaration that "the Tax Mandate in § 9901 of the American Rescue Plan Act . . . is in excess of Congress's Article I power . . . violated the Tenth Amendment . . . and is thus unenforceable." ECF No. 1 at 15. They are entitled to that declaration because it will "serve a useful purpose in clarifying and settling the legal relations at issue." *Sherwin-Williams Co.*, 343 F.3d at 390 n.2 (citing *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). Namely, such relief will clarify that the Tax Mandate violates the Spending Clause and the Tenth Amendment, and that the remainder of the law will remain in effect.

Defendants object to a declaratory judgment on two grounds. First, they say that ARPA and the accompanying regulations provide "more than sufficient clarity" to understand the States' legal obligations. Defendants' Combined Reply at 24. That argument is nonresponsive to the States' requested remedy because it goes to the *merits* of whether the Tax Mandate is unambiguous, not whether the Court should issue declaratory relief. And on the merits, as explained in Part II.A, the Tax Mandate is unconstitutionally ambiguous.

Second, Defendants argue that a declaratory judgment should not issue because the recoupment process offers an adequate "alternative remedy." Defendants' Combined Reply at 24. But it does not. As the *Kentucky* court held, States "will endure hardship if forced to accept this unconstitutional contract of adhesion that impedes on their sovereign powers." 2021 WL 4394249, at *7. That sovereign injury will persist until the Tax Mandate is declared unconstitutional and

23

enjoined from operation. The States are entitled to those remedies.

## CONCLUSION

The States respectfully request that the Court deny the Defendants' Motion to Dismiss and Motion for Summary Judgement, grant the States' Motion for Partial Summary Judgment, impose a permanent injunction, enter declaratory relief, and grant all other appropriate relief.

Date: November 8, 2021                    Respectfully submitted.

KEN PAXTON                                PATRICK K. SWEETEN
Attorney General of Texas                 Deputy Attorney General for Special Litigation
                                          Tx. Bar No. 00798537
BRENT WEBSTER
First Assistant Attorney General          WILLIAM T. THOMPSON
                                          Deputy Chief, Special Litigation Unit
JUDD E. STONE II                          Tx. Bar No. 24088531
Solicitor General
Tx. Bar No. 24076720                       /s/ Jeffrey M. White
                                          JEFFREY M. WHITE
                                          Special Counsel
                                          Tx. Bar No. 24064380

                                          RYAN D. WALTERS
                                          Special Counsel
                                          Tx. Bar No. 24105085

                                          JACK B. DISORBO
                                          Assistant Attorney General
                                          Tx. Bar No. 24120804

                                          OFFICE OF THE ATTORNEY GENERAL
                                          P.O. Box 12548 (MC-009)
                                          Austin, Texas 78711-2548
                                          Tel.: (512) 463-2100
                                          Fax: (512) 457-4410
                                          judd.stone@oag.texas.gov
                                          will.thompson@oag.texas.gov
                                          jeff.white@oag.texas.gov
                                          ryan.walters@oag.texas.gov
                                          jack.disorbo@oag.texas.gov

                                          **COUNSEL FOR PLAINTIFF STATE OF TEXAS**

LYNN FITCH
Attorney General of Mississippi

 /s/ Justin L. Matheny
JUSTIN L. MATHENY
Deputy Solicitor General
MS Bar No. 100754
State of Mississippi
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

**COUNSEL FOR THE STATE OF MISSISSIPPI**

JEFF LANDRY
Attorney General

 /s/ Elizabeth B. Murrill
ELIZABETH B. MURRILL*
Solicitor General
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (205) 326-6085
murrille@ag.louisiana.gov
*Admitted Pro hac vice

**COUNSEL FOR THE STATE OF LOUISIANA**

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2021, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF), which automatically serves all counsel of record who are registered to receive notices in this case.

_/s/ Jeffrey M. White_
Jeffrey M. White