U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR - 8 2022
CLERK, U.S. DISTRICT COURT
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:21-CV-079-Z |
| | § | |
| JANET YELLEN *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion") (ECF No. 27), filed on September 27, 2021, and Defendants' Motion for Summary Judgment ("Defendants' Motion") (ECF No. 44), filed on October 25, 2021.[1] Having considered the pleadings, evidence, and relevant law, the Court **GRANTS IN PART** Plaintiffs' Motion and **DENIES** Defendants' Motion. The Court **DISMISSES WITHOUT PREJUDICE** Count IV of Plaintiffs' Complaint as moot. The Court **ENJOINS** Defendants and any other agency or employee of the United States from enforcing 42 U.S.C. § 802(c)(2)(A) against Plaintiffs or recouping funds from Plaintiffs for a violation thereof.

### BACKGROUND

On March 11, 2021, President Biden signed the American Rescue Plan Act ("ARPA") into law. PUB. L. NO. 117-2, § 9901(a), 135 STAT. 4 (2021) (codified as 42 U.S.C. §§ 801 *et seq.*). ARPA establishes a "Coronavirus State Fiscal Recovery Fund," which earmarks $220 billion to mitigate the fiscal effects of the COVID-19 pandemic on States, territories, and tribal governments

---

[1] Plaintiffs are the States of Texas, Mississippi, and Louisiana. Defendants are Janet Yellen, in her official capacity as Secretary of the Treasury, Richard K. Delmar, in his official capacity as acting inspector general of the Department of the Treasury, the Department of the Treasury, and the United States of America.

through the year 2024. 42 U.S.C. § 802(a)(1). ARPA allocates nearly $200 billion to the States and District of Columbia. *Id.* § 802(b)(3)(A). States may use allocated funds in a wide range of areas to respond to the public-health emergency caused by COVID-19.

> For example, through 2024, a State may use ARPA funds to "cover costs incurred":
>
> (A)  to respond to the public health emergency with respect to the Coronavirus Disease 2019 (COVID-19) or its negative economic impacts, including assistance to households, small businesses, and nonprofits, or aid to impacted industries such as tourism, travel, and hospitality;
>
> (B)  to respond to workers performing essential work during the COVID-19 public health emergency by providing premium pay to eligible workers of the State, territory, or Tribal government that are performing such essential work, or by providing grants to eligible employers that have eligible workers who perform essential work;
>
> (C)  for the provision of government services to the extent of the reduction in revenue of such State, territory, or Tribal government due to the COVID-19 public health emergency relative to revenues collected in the most recent full fiscal year of the State, territory, or Tribal government prior to the emergency; or
>
> (D)  to make necessary investments in water, sewer, or broadband infrastructure.

*Id.* § 802(c)(1).

Despite the discretion ARPA affords States in using allocated funds, the statute imposes a limitation. Section 802(c)(2)(A) — called the "Tax Mandate" by Plaintiffs and the "offset provision" by Defendants — prohibits States from:

> us[ing] the funds provided under [Section 802] . . . to either directly or indirectly offset a reduction in the net tax revenue of such State or territory resulting from a change in law, regulation, or administrative interpretation during the covered period that reduces any tax (by providing for a reduction in a rate, a rebate, a deduction, a credit, or otherwise) or delays the imposition of any tax or tax increase.

*Id.* § 802(c)(2)(A). If a State accepts ARPA funds and flouts Section 802(c)(2)(A), it "shall be required to repay the Secretary [of the Treasury] an amount equal to the amount of funds used in

violation [thereof]." *Id.* § 802(e). Put differently, the State must repay funds used to offset the lesser of "the reduction to net tax revenue" or "the amount of funds received." *Id.*

On May 3, 2021, Plaintiffs sued Defendants for declaratory judgment and injunctive relief. ECF No. 1. Plaintiffs allege Section 802(c)(2)(A) is unconstitutional and present several claims in support of their requests for declaratory and injunctive relief. *See id.* First, Plaintiffs argue Section 802(c)(2)(A) violates the Spending Clause of the Constitution because it "condition[s] billions of dollars of pandemic-recovery funding . . . on maintaining Congress's favored tax policies." *Id.* at 11–12; *see also* U.S. CONST. art. I, § 8, cl. 1. Second, Plaintiffs allege the provision "is ambiguous as to its scope and not reasonably related to encouraging the States' economic recovery following the COVID-19 pandemic." ECF No. 1 at 12. They also maintain the provision "is [ ] far too overinclusive *and* underinclusive to bear any reasonable relationship to any legitimate purpose underlying the Act's funding provisions." *Id.* Plaintiffs therefore conclude Section 802(c)(2)(A) again violates the Spending Clause. *Id.* at 12–13. Third, Plaintiffs allege the provision "commandeer[s] the States' sovereign authority over their own tax polic[ies] . . . in violation of the Tenth Amendment." *Id.* at 14. Fourth, Plaintiffs contend the provision "violates [the Tenth Amendment and] the principle of equal sovereignty by targeting and invading the sovereignty only of those States that, as a matter of history and present fact, are likely to decrease taxes and other government revenues." *Id.* at 15. Plaintiffs have signed certifications and received ARPA funds — which they contend was the "inevitable result of Congress's coercive offer." ECF No. 28 at 15. Plaintiffs argue Section 802(c)(2)(A) continues to inflict injury upon them. *Id.*

On July 12, 2021, Defendants moved to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 27. The Court denied Defendants' Motion to Dismiss, finding Plaintiffs had standing to raise their claims and stated a facially plausible claim

for relief. ECF No. 50. The Court now considers Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. *See* ECF Nos. 27, 44. Plaintiffs move for summary judgment on all claims except their equal-sovereignty claim. ECF Nos. 27, 28. Defendants moved for summary judgment on all of Plaintiffs' claims. ECF No. 44.

### LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if its existence or non-existence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he substantive law will identify which facts are material." *Id.* at 248. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of the motion and show from the record that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing summary-judgment evidence, the court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). A court cannot make a credibility determination when considering conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If some evidence supports a disputed allegation, so that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

ANALYSIS

The federal government possesses only enumerated powers, while the States and people retain the remainder. *See* U.S. CONST. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). Our system of federalism ensures "powers which 'in the ordinary course of affairs, concern the lives, liberties, and properties of the people' [are] held by governments more local and more accountable than a distant federal bureaucracy." *Nat'l Fed'n of Indep. Bus. ("NFIB") v. Sebelius*, 567 U.S. 519, 536–37 (2012) (quoting THE FEDERALIST NO. 45, 293 (J. Madison) (C. Rossiter ed. 1961)). Federalism "serves as a check on the power of the Federal Government . . . [and] 'protects the liberty of the individual from arbitrary power.'" *Id.* (quoting *Bond v. United States*, 564 U.S. 211, 222 (2011)).

The Spending Clause of the Constitution recites one such power. The Spending Clause confers Congress the "Power To lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. CONST. art. I, § 8, cl. 1. Simply stated, "Congress may tax and spend." *NFIB*, 567 U.S. at 537. "Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 447, 474 (1980) (Burger, C.J.) (plurality op.)).

But Congress's spending power is limited. *Id.*; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (characterizing Spending Clause legislation as "much in the nature of a contract" between co-sovereigns). A spending condition must abide by several

5

requirements. First, a condition must "be in pursuit of 'the general welfare.'" *Id.* (quoting *Helvering v. Davis*, 301 U.S. 619, 640–41 (1937)). Second, Congress must condition the receipt of federal funds "unambiguously . . . , enabl[ing] the States to exercise their choice [whether to accept federal funds] knowingly, cognizant of the consequences of their participation." *Id.* (quoting *Pennhurst*, 451 U.S. at 17). Third, a condition must be reasonably related to a "federal interest in particular national projects or programs." *Id.* (quoting *Massachusetts v. United States*, 435 U.S. 444, 461 (1978)). Fourth, a condition may not violate another provision of the Constitution. *Id.* at 208. And fifth, although Congress may *persuade*, it may not *compel*. *NFIB*, 567 U.S. at 577–78 (Roberts, C.J.) ("[W]hen pressure turns into compulsion, . . . the legislation runs contrary to our system of federalism." (internal marks omitted)); *see also New York v. United States*, 505 U.S. 144, 162 (1992) (Congress cannot "require the States to govern according to Congress' instructions."). If a condition prompts a State to act "not of her unfettered will, but under the strain of persuasion equivalent to undue influence," then the condition exceeds Congress's authority under the Spending Clause. *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937).

The judiciary should exercise restraint in second-guessing Congress's policy judgments. Whereas members of Congress are accountable to the American people by our political processes, federal courts are insulated from political processes and "possess neither the expertise nor the prerogative to make policy judgments." *NFIB*, 567 U.S. at 538. Yet — where legislation threatens state sovereignty — an Article III court may intervene. "Otherwise the two-government system established by the Framers would give way to a system that vests power in one central government, and individual liberty would suffer." *Id.* at 577 (Roberts, C.J.).

6

### A. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs assert entitlement to injunctive and declaratory relief on Counts I–III of their Complaint.[2] ECF No. 27 at 1. They argue Section 802(c)(2)(A) is unconstitutional for three reasons: (1) "Congress's offer of ARPA funds in exchange for acceptance of the Tax Mandate is unconstitutionally coercive" and commandeers the States; (2) "Congress presented the States with an unconstitutionally ambiguous condition that the Secretary cannot cure"; (3) and "The Tax Mandate is unrelated to ARPA's purpose." ECF No. 28 at 28, 31, 38. For the reasons discussed below, the Court **GRANTS** Plaintiffs' request for summary judgment and **ENJOINS** Defendants from enforcing Section 802(c)(2)(A) against Plaintiffs.

> 1. *Congress's offer of ARPA funds in exchange for acceptance of Section 802(c)(2)(A) is unduly coercive and commandeers Plaintiffs.*

The Court considers Plaintiffs' coercion and anti-commandeering claims together because both the Spending Clause and Tenth Amendment require the Court to ask whether the challenged "provision is inconsistent with the federal structure of our Government established by the Constitution." *New York*, 505 U.S. at 177; *NFIB*, 567 U.S. at 578–79 (Roberts, C.J.). As for Plaintiffs' coercion claim, Congress may attach "appropriate conditions to federal taxing and spending programs to preserve its control over the use of federal funds." *NFIB*, 567 U.S. at 579 (Roberts, C.J.). Such legislation — however — is contractual in nature and "[t]he legitimacy of Congress's exercise of the spending power [] rest[s] on whether the State voluntarily and knowingly accepts the terms of the contract." *Id.* at 576–77 (Roberts, C.J.) (quoting *Pennhurst*, 451 U.S. at 17) (internal marks omitted). Congress cannot order states to forgo a sovereign power by an explicit command or a conditional offer a State cannot refuse. *Id.* While the choice before

---

[2] *See* ECF No. 1 (Count I: violation of Constitution, article I; violation of the Spending Clause. Count 2: violation of. Constitution, article I; violation of the Spending Clause. Count 3: violation of the Tenth Amendment; violation of anti-commandeering principle).

Plaintiffs may be one *in theory*, the Court considers whether Plaintiffs possess a choice *in fact*. *Id.* at 581 (Roberts, C.J.); *Dole*, 483 U.S. at 211–12. Regarding Plaintiffs' anti-commandeering claim, the Constitution establishes a system of "dual sovereignty." *Printz v. United States*, 521 U.S. 898, 918 (1997) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). "The Constitution confers on Congress not plenary legislative power but only certain enumerated powers," leaving "all other legislative power [reserved] for the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018). The anti-commandeering principle affirms the Tenth Amendment's restriction on Congress's ability to "issue direct orders to the governments of the States." *Id.*

To avoid recoupment of ARPA funds, Plaintiffs must comply with Section 802(c)(2)(A). Plaintiffs allege the threatened loss of ARPA's pandemic-recovery funds — totaling 22 percent of all States' annual general-funds budgets and 9 percent of all States' total-fund budgets — is a "gun to the head." ECF No. 28 at 30 (quoting *NFIB*, 567 U.S. at 581 (Roberts, C.J.)); *see also* NATIONAL ASSOCIATION OF STATE BUDGET OFFICERS, THE FISCAL SURVEY OF STATES ("NASBO SURVEY") 13 (2020). While Section 802(c)(2)(A) may be styled as a "[f]urther restriction on use of funds," in reality "the Tax Mandate creates an independent obligation on States accepting ARPA funds to not reduce their own tax revenues — because money is fungible and Treasury may deem ARPA funds to have 'either directly or indirectly offset' such a reduction." ECF No. 28 at 30 (quoting 42 U.S.C. § 802(c)(2)) (alteration in original). Plaintiffs argue ARPA is "all the more coercive" as States' "costs have increased and their general revenue has decreased" during the COVID-19 pandemic. ECF No. 48 at 23–24. "Simply put, the States' need for federal funds is far greater than usual, so their ability to decline such an offer is far less than usual." *Id.* at 24.

Defendants argue Section 802(c)(2)(A) only applies to a State's "*use [of] the funds* provided under this section" and "only the amount it uses as an improper offset." ECF No. 46 at

8

24 (quoting 42 U.S.C. § 802(c)(2) (emphasis added)). Thus, Congress is not "'pressuring the States to accept policy changes' independent of the new federal funds." *Id.* (quoting *NFIB*, 567 U.S. at 580 (Roberts, C.J.)). Spending conditions on new funds, unlike conditions on preexisting funds, do not "trigger[] the coercion question" at all. ECF No. 46 at 16–17 (quoting *Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 183 (5th Cir. 2020)). Defendants also argue Plaintiffs' recognition of "maintenance-of-effort" requirements as generally constitutional cannot be squared with Plaintiffs' coercion claim. *Id.* at 26. Spending Clause legislation often features "maintenance-of-effort" funds. *Id.* Such funds ensure a State uses federal grants to supplement — not supplant — state spending. *Id.* Defendants contend Section 802(c)(2)(A) is *less* intrusive on States' budgets than maintenance-of-effort provisions because the "offset provision" allows states to "supplant" rather than supplement planned state funds with ARPA funds. *Id.* Congress routinely prohibits States from passing tax laws without violating the Tenth Amendment, and Section 802(c)(2)(A) simply provides Plaintiffs a "legitimate choice whether to accept the federal conditions in exchange for federal funds." *Id.* at 27 (quoting *NFIB*, 567 U.S. at 578 (Roberts, C.J.)).

The Court agrees with Plaintiffs. In our constitutional system, States maintain "a residuary and inviolable sovereignty." THE FEDERALIST NO. 39, 245 (J. Madison). Of all the powers the Constitution reserves to the States, there is no power more central to state sovereignty than the power to tax. *Dep't of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 345 (1994). The power to tax "is indispensable to [the States'] existence," and the "power of self[-]government . . . cannot exist distinct from the power of taxation." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 199 (1824); *Providence Bank v. Billings*, 29 U.S. (4 Pet.) 514, 546 (1830). The federal government exceeds its authority when it unduly influences a State's power to set its own tax policies. Such an exercise of

9

authority threatens our system of federalism and, in turn, individual liberties that "derive from the diffusion of sovereign power." *Bond*, 564 U.S. at 221 (quoting *New York*, 595 U.S. at 181).

Although Plaintiffs have not been notified of any recoupment of ARPA funds, the Court judges the alleged coercion here at the time the States must choose whether to surrender their sovereignty or forgo billions of dollars in federal funds. *NFIB*, 567 U.S. at 582 & n.12 (Roberts, C.J.). In *NFIB v. Sebelius*, the Supreme Court held Congress's financial inducement crossed the line between persuasion and coercion by conditioning Medicaid funding on a State's agreement to expand Medicaid coverage — creating a "threatened loss of over 10 percent of a State's overall budget." *Id.* at 582 (Roberts, C.J.). Such a loss was an "economic dragooning that [left] the States with no real option but to acquiesce." *Id.* (Roberts, C.J.).

The Supreme Court contrasted the facts in *NFIB* with those in *South Dakota v. Dole*. *Id.* at 580–81 (Roberts, C.J.). *Dole* considered whether Congress overstepped its spending power when it threatened to withhold five percent of South Dakota's federal highway funds if the State refused to raise its minimum drinking age to 21. 483 U.S. at 211. The Supreme Court determined the conditional offer was not coercive because "Congress ha[d] offered relatively mild encouragement to the States to enact higher minimum drinking ages than they would otherwise choose." *Id.* Withholding five percent of South Dakota's federal highway funds was not coercive enough to remove a real choice from the State. *Id.* at 211–12. In total, the withheld federal funds accounted for "less than half of one percent of South Dakota's budget at the time." *NFIB*, 567 U.S. at 581 (Roberts, C.J.).

ARPA funds amount to around 22 percent of all States' annual general-fund budgets and 9 percent of all States' total-fund budgets. NASBO SURVEY at 13. Texas is entitled to nearly $16 billion, which accounts for more than 13 percent of the State's 2021 budget; the amount

10

available to Mississippi is nearly $2 billion, equivalent to 31 percent of the State's 2021 budget; and the amount available to Louisiana is over $3 billion, which equals 7 percent of the State's 2021 budget. *See* ECF No. 28 at 10. By contrast, in *NFIB*, the Supreme Court determined "[t]he threatened loss of over 10 percent of a State's overall budget . . . is economic dragooning that leaves the States with no real option but to acquiesce in the Medicaid expansion." 567 U.S. at 582 (Roberts, C.J.). Although the 10-percent mark in *NFIB* is not a dogmatic threshold that must be met for unconstitutional financial coercion to exist, the figure guides this Court when determining whether Congress has offered "undue influence" or "relatively mild encouragement." *Id.* at 578, 579–80 (Roberts, C.J.) (quoting *Steward Mach. Co.*, 301 U.S. at 590 & *Dole*, 483 U.S. at 211). The Court finds the threat to Plaintiffs' budgets here is "economic dragooning" that exerts "undue influence" rather than "relatively mild encouragement." *Id.* at 579–80, 582 (Roberts, C.J.); *see also Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 284 (6th Cir. 2009) (Sutton, J., concurring) ("[W]hat State in these fiscally challenging times would have the fortitude to turn down hundreds of millions of dollars . . . ?").

The Court also finds Section 802(c)(2)(A) is not a permissible maintenance-of-effort provision. Section 802(c)(2)(A) substantially differs from a maintenance-of-effort provision. For example, *Bennett v. Kentucky Department of Education* involved Title I funds made available to States "to support compensatory education programs for disadvantaged children." 470 U.S. 656, 659 (1985). "In order to assure that federal funds would be used to support additional services that would not otherwise be available, the Title I program . . . prohibited the use of federal grants merely to replace state and local expenditures." *Id.* Section 802(c)(2)(A) — by contrast — prohibits tax cuts altogether and does not require any maintenance of effort. Neither ARPA nor Section 802(c)(2)(A) prohibit a State from replacing state expenditures with ARPA funds. States

may only apply ARPA funds in four ways. 42 U.S.C. § 802(c)(1). A State need not supplement preexisting state spending in an enumerated area; it remains free to supplant state spending with ARPA funds and spend the resulting surplus of state funds in another area — even if that area is unrelated to COVID-19 relief.

For the reasons above, the Court finds Congress's offer of ARPA funds in exchange for acceptance of Section 802(c)(2)(A) is coercive and commandeers Plaintiffs.[3]

2. *The Court need not address Plaintiffs' other arguments.*

Plaintiffs also allege Section 802(c)(2)(A) is unconstitutionally ambiguous and unrelated to ARPA's purpose. But the Court will refrain from addressing those questions of constitutional law "in advance of the necessity of deciding [them]." *Wash. St. Grange v. Wash. St. Republican Party*, 552 U.S. 442, 450–51 (2008) (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)); *see also Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). "Where the Court has made a full disposition of the case without addressing a constitutional claim, it will not address the issue." *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 3603341, at *23 (N.D. Tex. Aug. 13, 2021); *see also Matal v. Tam*, 137 S. Ct. 1744, 1755 (2017) ("We have often stressed that it is important to avoid the premature adjudication of constitutional questions and that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable." (internal marks omitted)).

---

[3] ARPA authorizes the Secretary of the Treasury "to issue such regulations as may be necessary or appropriate to carry out" the applicable statutory provisions. *Id.* § 802(f). On May 17, 2021, the Secretary of the Treasury published an Interim Final Rule ("IFR") setting forth a framework to determine when a State has used ARPA funds to "directly or indirectly offset" net tax revenue. *See Coronavirus State and Local Fiscal Recovery Funds*, 86 Fed. Reg. 26,786 (May 17, 2021). Whereas the IFR may clarify an unconstitutionally ambiguous offer, the IFR "has no bearing on whether Congress's offer is unconstitutionally coercive." *Kentucky v. Yellen*, No. 3:21-CV-00017-GFVT-EBA, 2021 WL 4394249, at *6 n.13 (E.D. Ky. Sept. 24, 2021). The IFR therefore does not affect the Court's analysis.

Because the Court finds Congress exceeded its Spending Clause authority and violated the anti-commandeering doctrine when it enacted Section 802(c)(2)(A), the Court need not address Plaintiffs' remaining arguments. *See Ashwander*, 297 U.S. at 347 (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (quoting *Burton v. United States*, 196 U.S. 283, 295 (1905))). The Court notes — however — Section 802(c)(2)(A)'s alleged ambiguity is thoroughly addressed in *Ohio v. Yellen. See* 547 F. Supp. 3d 713, 730 (S.D. Ohio 2021) ("Although Ohio raises both coercion and ambiguity in support of its Spending Clause challenge, the Court's resolution of this case rests on ambiguity concerns.").

**B. Permanent Injunction**

Plaintiffs ask the Court to permanently enjoin enforcement of Section 802(c)(2)(A) against them. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006). The four factors are: "(1) that [Plaintiffs have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

The Court finds Plaintiffs satisfy each factor. First, Plaintiffs will continue to suffer harm to exercise their indispensable sovereign power to tax if Section 802(c)(2)(A) is not enjoined. Second, monetary damages are an insufficient remedy at law to compensate for an ongoing violation of Plaintiffs' sovereign power to tax because the federal government enjoys sovereign immunity against claims for money damages. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)

("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").[4] Third Defendants will suffer minimal harm. Defendants have no judicially cognizable interest in enforcing a provision — such as Section 802(c)(2)(A) — that is coercive and commandeers Plaintiffs, and Defendants remain able to enforce the other ARPA provisions. *See Ohio*, 547 F. Supp. 3d at 740. Fourth, it is in the public interest to prevent a violation of Plaintiffs' constitutional rights. *See Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *see also Ohio*, 547 F. Supp. 3d at 740 ("[T]he limitations on Congress's ability to use its Spending Clause authority to make funding offers to the States are designed to protect this country's dual-sovereign structure, which in turn is meant to promote individual liberty. Accordingly, enforcing those limitations will serve that interest, an interest that qualifies as 'public.'").

The Court therefore **GRANTS** Plaintiffs' request for a permanent injunction and **ENJOINS** Defendants and any other agency or employee of the United States from enforcing Section 802(c)(2)(A) against Plaintiffs or recouping funds from Plaintiffs for a violation thereof.

### C. Declaratory Judgment

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* The Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). When presented with a request to decide or dismiss a declaratory-judgment suit, the district court must determine whether: (1) "the declaratory action is justiciable";

---

[4] Although this is an official-capacity suit — and thus a suit against the federal government — sovereign immunity does not prohibit a claim for injunctive relief to stop an unconstitutional act. *See, e.g., Larson v. Domestic Com. Corp.*, 337 U.S. 682, 690 (1949).

14

(2) "the court has the authority to grant declaratory relief"; and (3) "whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2022).

Plaintiffs ask this Court to declare Section 802(c)(2)(A) unconstitutional. ECF No. 28 at 42. Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Sherwin-Williams*, 343 F.3d at 389 (quoting *Wilton*, 515 U.S. at 286). Further, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* (quoting *Wilton*, 515 U.S. at 289). Because the permanent injunction remedies Plaintiffs' ongoing harm, the Court **DENIES** Plaintiffs' request for declaratory judgment. *See West Virginia v. U.S. Dep't of Treasury*, No. 7:21-CV-00465-LSC, 2021 WL 530094, at *19 (N.D. Ala. Nov. 15, 2021) ("Here, because a permanent injunction *fully rectifies* the Plaintiff States' harm, the Court need not also issue a declaratory judgment." (emphasis added)); *Kentucky*, 2021 WL 4394249, at *8 ("Because a permanent injunction *fully rectifies* the Plaintiffs' harm, the Court need not address the issue of a declaratory judgment." (emphasis added)); *Ohio*, 547 F. Supp. 3d at 741 ("Here, the Court's grant of injunctive relief *fully protects* Ohio against every aspect of the ongoing irreparable harm that Ohio is suffering. . . . Accordingly, the declaratory relief that Ohio seeks would add nothing to the Court's resolution of this matter." (emphasis added)).

### D. Defendants' Motion for Summary Judgment

Although Plaintiffs only moved for summary judgment on Counts I–III, Defendants request summary judgment on all of Plaintiffs' claims. ECF No. 44 at 1 (requesting summary judgment on Counts I–IV). By granting summary judgment and enjoining enforcement of Section 802(c)(2)(A), Plaintiffs will no longer suffer any ongoing harm.

The Constitution permits a federal court to adjudicate only "cases" or "controversies." U.S. CONST. art. III, § 2. "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Env't Conserv. Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008); *Little v. Bowers*, 134 U.S. 547, 556–58 (1890) (dismissing appeal over absence of "actual controversy, involving real and substantial rights, between the parties"). Mootness is an issue of subject-matter jurisdiction. *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009). "Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Id.* (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Id.* (quoting *Ctr. for Individ. Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).

A case or claim becomes moot if "'there are no longer adverse parties with sufficient legal interests to maintain the litigation' or 'when the parties lack a legally cognizable interest in the outcome' of the litigation." *Env't Conserv. Org.*, 529 F.3d at 527 (quoting *Scruggs v. Lowman (In re Scruggs)*, 392 F.3d 124, 128 (5th Cir. 2004) (per curiam)); *see also County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (noting mootness arises when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). In other words, a claim "becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) (emphasis removed); *see also Geismann v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018) (same); *Mote v. Wilkie*, 976 F.3d 1337, 1341 (Fed. Cir. 2020) ("And a case becomes moot when a claimant receives all her requested

16

relief."); *cf. San Mateo County v. S. Pac. R.R. Co.*, 116 U.S. 138, 141–42 (1885) (noting the "debt for which the suit was brought has been unconditionally paid and satisfied" and thus "there [was] no longer an existing cause of action in favor of the county against the railroad company"); *California v. San Pablo & Tulare R.R. Co.*, 149 U.S. 308, 313–14 (1893) (stating "there can be no doubt that this writ of error must be dismissed, because the cause of action has ceased to exist").

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The Court finds the permanent injunction will "fully rectify" and "fully protect" Plaintiffs' from the harm they suffer. *West Virginia*, 2021 WL 530094, at *19; *Ohio*, 547 F. Supp. 3d at 741; *see also Kentucky*, 2021 WL 4394249, at *8 (same). Once fully rectified, the Court can do no more to remedy Plaintiffs' injuries. *See Schnabel v. Phila. Am. Life Ins. Co.*, 795 F. Supp. 816, 824 (S.D. Tex. 1992) ("Although Plaintiff's Motion for Partial Summary Judgment does not address his other causes of action, by granting his motion, the Court has afforded plaintiff all of the relief he could receive under all or any of his other causes of action."); *see also, e.g., Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1989) ("[A] request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined."); *Seafarers Int'l Union of N. Am. v. Nat'l Marine Servs., Inc.*, 820 F.2d 148, 151 (5th Cir. 1987) ("Once the action that the plaintiff sought to have enjoined has occurred, the case is mooted because 'no order of this court could affect the parties' rights with respect to the injunction we are called upon to review.'" (quoting *Honig v. Students of Cal. Sch. for Blind*, 471 U.S. 148, 149 (1985))).

For the aforementioned reasons, the Court **DENIES** Defendants' Motion and **DISMISSES** Count IV *sua sponte* and without prejudice as moot. *See Texas*, 2021 WL 3603341, at *23 ("Because the Court will grant Plaintiffs full relief on their . . . claims, there is no further relief . . . the Court can grant.").

CONCLUSION

For these reasons, the Court **GRANTS IN PART** Plaintiffs' Motion and **ENJOINS** Defendants and any other agency or employee of the United States from enforcing Section 802(c)(2)(A) against Plaintiffs or recouping funds from Plaintiffs for a violation thereof. The Court **DENIES** Plaintiffs' request for declaratory relief. The Court **DENIES** Defendants' Motion. The Court **DISMISSES WITHOUT PREJUDICE** Count IV of Plaintiffs' Complaint as moot. To the extent allowed by law, Plaintiffs shall recover attorney's fees and related non-taxable expenses as the Court may hereafter award on timely motion. *See* FED. R. CIV. P. 54(d).

**SO ORDERED**.

April 8, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE